[Crim. No. 4835.   In Bank.   Apr. 23, 1948.]

THE PEOPLE, Respondent, v. KENNETH I. DOTY et al., Appellants.

Paul E. Tapley and E. W. Miller for Appellants.

Fred N. Howser, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendants Doty and Flohr appeal from judgments entered on verdicts that each is guilty of four counts of burglary of the second degree. They contend that their confessions, which are in evidence, were extracted by the use of violence. This contention, as hereinafter explained in more detail, is not now available to them as a ground for reversal because they allowed the confessions to be received in evidence without objection and without any showing of unlawfulness, and because the evidence as to violence which was subsequently adduced did no more than create a sharp conflict on the issue as to whether the confessions were freely and voluntarily given, which conflict we must presume to have been finally resolved against defendants by the triers of fact.

The following evidence, apart from the confessions, supports the verdicts: At about 2:30 a. m. on August 3, 1946, two police officers, O'Connell and Murphy, on patrol in a radio car, observed defendants in a Safeway market on Westwood Boulevard in West Los Angeles. Defendant Flohr was crouched before a safe. Officer O'Connell shouted, "We are police officers. Come out or we will shoot." Defendants ran from the store and attempted to flee. Officer Murphy shouted, "Stop, or I will shoot." Defendants disregarded this warning. Each officer then fired two shots at the defendants. Neither defendant was wounded by the gunfire but each flung himself to the ground. The officers then attempted to place handcuffs on defendants. Murphy testified, "I wanted to handcuff him [Flohr] but he persisted in lying on his hands and at that time I rubbed his face on the cement there." O'Connell testified that Doty "started to get up from the ground in a crouching position and I instructed him to place one hand out so I could place the handcuffs on him . . . and he refused and he kept coming up slowly from the ground. . . . When he began resisting the arrest, I struck him about three or four times and . . . there were boxes that were up against a wall. . . . And as I hit him the last time he went back into these boxes." Defendants were handcuffed and lay on the sidewalk. Murphy "asked them

where their car was and they said they had no car, that they came on the bus.'' Officer Whiteford arrived at the store just after defendants had been handcuffed and while they were lying on the ground. He testified that Doty ''was ·raised to his feet and he staggered up and back to the corner of the store building. . . . I told him he had better tell us where the car was, he doubled over and I placed my hand against his front portion of the ·chest or neck and straightened him back up against the wall.'' Doty then said that the automobile was parked about a block from the store.

Three Safeway markets in Los Angeles, one on Third Street, one on Robertson Boulevard, and one on Melrose Avenue, had been forcibly entered on the night of August 2; the safes therein had been broken open, and from each safe had been taken coins, bills of denominations from one dollar to twenty dollars, and checks. Entry to each of the four Safeway stores was effected by cutting the hasp which held the padlock of the door. In the Westwood store, where defendants were apprehended, was found a bolt cutter. From microscopic examination it appeared that this instrument had been used to cut the hasp of the Melrose store. The total amount stolen from the Third Street store was $748.71; approximately two-thirds of this amount was cash and one-third was represented by checks. About $1,340 was taken from the Robertson store and $803.29 from the Melrose store. In defendants' car were three paper bags which contained ''Everything from pennies to twenty dollar bills.'' One bag contained $925.25 in cash and 11 checks, in the total amount of $248.58, which had been taken from the Robertson store. The other bags contained, respectively, $657.20 and $710.15 in cash. Each of the defendants, at the time of their apprehension, was wearing old gloves. Defendants at no time gave to the police an exculpatory explanation of their presence in the Westwood store and their possession of the paper bags of money and checks. Their attempted explanation to which they testified at the trial was rejected by the jury.

Immediately after their above described arrest defendants were taken to·the police station. When they arrived there, at about 3 a.m. on the morning of August 3, they were given medical attention because of the injuries which they suffered when they resisted arrest. They were then interviewed by Captain Christensen, Officer Light, and Sergeant Armstrong, and confessed. Before evidence of the confessions

was introduced at the trial, Officer Light, who testified thereto, made the requisite preliminary showing that they were "free and voluntary." Defendants did not object to the introduction of the confessions in evidence, did not make *voir dire* inquiry of the officer as to the manner in which they were obtained, and did not at this time attempt by their own testimony to show that either of such confessions was not "free and voluntary." Instead of availing themselves of their opportunity, in accord with the established practice of this state, to obtain a preliminary ruling of the trial court rejecting the evidence of the confessions if it found that they were improperly obtained, defendants chose to let the evidence of the confessions go to the jury and to present their evidence as to coercion as part of their defense. They testified that they were alternately beaten by Armstrong and urged to confess by Light. This testimony was contradicted in detail by rebuttal testimony of the police officers who were present at and about the time the confessions were made, including the testimony of Sergeant Armstrong, whom defendants accuse of brutality. There was no motion to strike the evidence of the confessions. The factual issue as to the manner in which they were obtained went to the jury which, correctly instructed (we must assume, for the instructions are not part of the record on appeal and no complaint thereof is made), resolved it against defendants.

On motion for new trial defendants did not argue or even mention the contention which they now urge. Their motion was "under all the statutory provisions of Section 1181 with particular attention to Subdivision 6 thereof ["When the verdict is contrary to law or evidence"]." There being not the slightest indication to the contrary, we must assume that the trial judge, who saw and heard the witnesses, duly performed his duty, again considered the disputed question of fact, and, like the jury, resolved it against defendants. No appeal was taken from the ensuing order denying a new trial.

There is nothing in the record which would justify our holding that, as a matter of law, the testimony of defendants is true and the directly conflicting testimony of the police officers is false. This is not a case like *Ashcraft* v. *Tennessee* (1944), 322 U.S. 143, 153 [64 S.Ct. 921, 88 L.Ed. 1192] ; *People* v. *Jones* (1944), 24 Cal.2d 601 [150 P.2d 801], and other cases relied upon by defendants, where the conclu-

sion that a confession was made under coercive circumstances was reached without the reviewing court's resolving any disputed question of fact. (See, also, *Malinski* v. *New York* (1945), 324 U.S. 401, 404 [65 S.Ct. 781, 89 L.Ed. 1029]; *Haley* v. *Ohio* (1948), — U.S. — [— S.Ct. —, 92 L.Ed. —, 16 L.W. 4081].) Rather, this case comes within the principle stated in *Lisenba* v. *California* (1941), 314 U.S. 219, 238 [62 S.Ct. 280, 86 L.Ed. 166] : "There are cases . . . where the evidence as to the methods employed to obtain a confession is conflicting, and in which, although denial of due process was not an issue in the trial, an issue has been resolved by court and jury which involves an answer to the due process question. In such a case we accept the determination of the triers of fact, unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process."

█ Defendants rely upon an informal statement of the trial judge, made immediately after the jury had returned its verdict and had been discharged, to show that the receipt of the confessions in evidence was necessarily prejudically erroneous. The judge said, "There was strong evidence in this case that the police exercised force and brutalities on these defendants. The Court isn't at all convinced that didn't happen, and from a preponderance of the evidence, the indication is that certain members of the Los Angeles Police Department did use force and threats on these defendants. . . . [T]o my mind the evidence as presented indicates there were brutalities used." These informal remarks of the trial judge, made at a time when there was nothing before him for decision, indicate views which, if they endured after mature reflection, might well have impelled him to suggest that the district attorney consider the filing of criminal charges, or the initiation of a grand jury investigation looking toward possible indictments, against the assertedly transgressing police officers, but, as previously indicated, they cannot impeach the judge's final, considered, impliedly contrary opinion expressed in and by his order denying the subsequently made motion for new trial. (*People* v. *Collins* (1935), 9 Cal.App. 2d 156, 157 [48 P.2d 992].) Neither can they impeach the jury's verdict. Moreover, the trial judge, upon the informal occasion mentioned, went on to say, "I have no criticism of the verdict. . . . They, the jury, [correctly instructed so to do should they find that the confessions were improperly ob-

tained] rightly perhaps, disregarded the confessions and even admissions and still arrived at the result''; it is also shown that in this connection the prosecuting attorney replied (and, so far as appears from the record, his conclusion is equally as plausible as that of the trial judge), ''I believe the verdict of the jury in this case has been a complete vindication of the Police Department . . . and that they have heard all of the testimony on both sides and that they believe the police officers.'' It may well be that at the time the judge passed on the motion for a new trial he had concluded that the district attorney's theory of the verdict was correct. In any event, by denying the motion he evidenced the view that the defendants were guilty in fact and that the verdicts had been lawfully rendered.

As to other contentions briefly mentioned, defendants concede that they ''could not hope for a reversal of the judgment on these minor points.'' With this concession we agree.

For the reasons above stated, the judgments are affirmed as to each defendant.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.