[Crim. No. 2850. First Dist., Div. One. Apr. 30, 1953.]

THE PEOPLE, Respondent, v. EDWARD HARMON,
Appellant.

Alfred J. Hennessy for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged by information with three counts of armed robbery, and with one count of assault with intent to commit murder. He also was charged and admitted two prior felony convictions. He was convicted of two counts of robbery and of assault with a deadly weapon. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

An examination of the record demonstrates that the evidence is sufficient to support all three convictions. The facts are as follows:

### Robbery and the Assault Committed Against
### David Pelsinger

 Pelsinger on June 14, 1951, was robbed and shot while in the garage of his home in San Francisco. He had returned home about 6:45 a. m., when two men, one of whom he identified as defendant, followed him into the garage and at gunpoint demanded his money. Defendant wielded the gun. Pelsinger testified that he handed his money, which he claimed was $1,100 and which the accomplice later testified was $900, over to the bandits; that he then grappled with defendant; that defendant shot at him twice, one shot hitting him in the neck; that the two bandits then escaped by automobile.

Pelsinger identified defendant at the trial as the robber who had shot him. He also identified him in a police line-up about a month after the robbery. Defendant challenges the police line-up identification on the ground that, according to his testimony, the police pointed defendant out to Pelsinger before the identification was made. Defendant's testimony on this point was corroborated by a fellow prisoner, but was directly and unequivocally contradicted by the police officer who conducted the line-up, and by Pelsinger. In view of this conflict the determination of the fairness of the identification was for the jury.

Defendant's accomplice and fellow bandit, Jack Stanton, was called by the prosecution in rebuttal. He testified in detail as to how he and defendant planned the robbery, trailed Pelsinger to the garage, and committed the robbery and the assault. At the time he testified, Stanton was in San Quentin for another crime and had been charged with the Pelsinger robbery. He admitted that by reason of his testifying against defendant he was hopeful of receiving leniency on the Pelsinger charge, but denied that the prosecuting or other officials had made any promises to him of leniency or immunity.

Defendant testified that he was home in bed during the time when Pelsinger was held up and shot.

 In addition to this testimony, defendant made two confessions to the police officers in which he admitted that he had committed the Pelsinger robbery and assault. The admissibility of this confession is challenged on this appeal, but, for reasons hereafter stated, we are of the opinion that the confession was properly admitted. This being so, the confession constitutes additional evidence that appellant com-

mitted the two crimes charged. The evidence in support of these two charges is obviously sufficient.

### Robbery of Samuel W. Pearce

Defendant was acquitted of this charge, so that the evidence relating to it will not be reviewed.

### Robbery of Thomas S. Pothier

Pothier, the operator of a grocery store, testified that on June 28, 1951, he was held up by a man with dark glasses and a soft hat, wearing a topcoat. The topcoat was open, disclosing that the bandit carried an automatic pistol in the waistband of his trousers. The robber demanded money. Pothier thereupon handed him $45 from the cash register, and, while doing so, grabbed the robber's gun hand and started to wrestle with him. During the melee Pothier hit the robber in the head with a beverage bottle and then hit him across the hand causing him to drop the gun. While Pothier was picking up the gun the robber escaped without the money. The gun was loaded. When arrested, defendant had a cut across the back of his hand. He claimed that he received this cut while changing a tire, and was corroborated by his brother-in-law.

The identification of defendant as the robber by Pothier is equivocal. He testified that he got a look at the robber while wrestling with him and after he hit him with the bottle, but was unable positively to identify defendant in the municipal court hearing or on this trial. He did testify that he had the impression from the size and appearance of the robber as compared with those of the defendant that they were similar.

It must be conceded that the evidence of identification by Pothier is most unsatisfactory and, standing alone, would be insufficient. But it does not stand alone. The confession, if properly admitted into evidence, supplied this missing link in the chain of proof. While a confession is not admissible until proof of the corpus delicti (see cases collected 8 Cal.Jur., p. 234, § 303), here the corpus delicti, the fact that a crime was committed, was fully established by the evidence of Pothier. ▮ Proof of the corpus delicti does not involve proof of the identification of the defendant as the culprit. (See cases collected in 8 Cal.Jur., p. 165, § 247, particularly cases cited in fn. 11 on p. 166.) ▮ Thus the confession, if properly admitted, is substantial evidence of identification. In our opin-

ion, the confession was properly admitted. This being so, the evidence is sufficient to sustain the judgment on this count.

Defendant strenuously contends that the confession was not free and voluntary, but was obtained by force and threats. Of course, if the evidence so showed and was believed, the confessions should not have been admitted. (*People* v. *Borello,* 161 Cal. 367 [119 P. 500, 37 L.R.A.N.S. 434] ; *People* v. *Siemsen,* 153 Cal. 387 [95 P. 863].) But if there is a substantial conflict in the testimony as to the commission of the acts relied upon to show that the confession was involuntary, then it becomes a question of fact as to who is telling the truth. The determination of the trier of the facts in such cases, as with other fact questions, is conclusive. (*People* v. *Cucco,* 85 Cal.App.2d 448 [193 P.2d 86] ; *People* v. *Lisenba,* 14 Cal.2d 403 [94 P.2d 569], affd. 314 U.S. 219 [62 S.Ct. 280, 86 L.Ed. 166] ; *People* v. *Doty,* 31 Cal.2d 696 [192 P.2d 454].)

Here the evidence on the issue was directly conflicting. Defendant testified that, before he confessed, Assistant Inspector Maguire of the police department subjected him to a brutal beating, which he described in detail, and threatened to continue unless defendant confessed. He then, in fear of his life, orally confessed to Inspector Cruickshank, who repeated the threats, and then, still in fear of further mistreatment, confessed in the presence of the two police officers and a police stenographer. A cellmate of defendant's corroborated this story to the extent of testifying to Maguire's shoving defendant to his knees and warning him to give the right answers when Maguire summoned defendant from his cell for questioning, and in testifying that defendant appeared normal when he left the cell but when he returned he had a bad cut on his head, his arm was sore, his ribs and stomach were bruised, his hand was bleeding and he looked beaten and dishevelled. If these stories were believed, the confession obviously should not have been admitted into evidence.

But these stories were not believed. The trier of the facts elected to believe the conflicting testimony. Cruickshank and Maguire directly and unequivocally denied that there had been any violence, threats or promises of immunity in any phase of the questioning. They also testified that none of the proceedings in relation to the confessions took place in the inner office where defendant had testified he had been taken and beaten, but took place in the outer office of the

department in full view of all present. This phase of their testimony was corroborated by the police stenographer. Defendant's description of the room where he claims he was beaten was quite inaccurate.

In view of these major and substantial conflicts, the determination of the trial judge to admit the confession, and the implied finding of the jury, based on proper instructions, that the confession was free and voluntary, cannot be disturbed on this appeal.

The confessions, both the one told to the two police officers without a reporter being present, and the one taken down by the reporter but unsigned by defendant, are complete and detailed. They cover all the essential elements of the crimes of which defendant has been convicted, and most of their details. The confession also included another armed robbery not included in the information. Defendant contends that evidence of this crime should not have been admitted over his objection, and that the instruction based on this evidence should not have been given. The instruction, a long and involved one, was to the effect that the evidence of the uncharged crime was introduced for a "limited purpose," and not to prove a "distinct offense" or "continual criminality" but could be considered as relevant on the issue of guilt on the charges involved dependent upon whether it showed identity, motive, intent or a plan, scheme or design.

The evidence of the uncharged crime did show a common plan or scheme, the *modus operandi* being precisely the same as that employed in the charged crimes. The evidence, and the instruction based thereon, were therefore proper. (*People* v. *Baker*, 25 Cal.App.2d 1 [76 P.2d 111]; *People* v. *McMonigle*, 29 Cal.2d 730 [177 P.2d 745]; *People* v. *Albertson*, 23 Cal.2d 550 [145 P.2d 7]; *People* v. *Kynette*, 15 Cal.2d 731 [104 P.2d 794]; *People* v. *Burns*, 109 Cal.App. 2d 524 [241 P.2d 308].)

The defendant complains that an instruction proffered by him on the legal effect of a confession should have been given. The proffered instruction correctly told the jury that a confession could not establish the fact that a crime had been committed, that the corpus delicti had to be established by independent evidence, but that such independent evidence need not prove identity. The proffered instruction undoubtedly correctly stated the law, but its substance was given by the trial court in another instruction. The one given was much simpler, clearer and fairer than the proffered

instruction. This being so, it was not error to refuse to give the proffered instruction.

Defendant next objects to certain evidence which he claims was erroneously admitted over his objections, or which should have been stricken on his motion. This evidence related to the count dealing with the Pearce robbery. ■ Defendant was acquitted of this charge, so that he cannot complain of the improper admission of evidence relating to that count.

■ Defendant also contends that the trial judge committed prejudicial misconduct in his comments to the jury during the cross-examination of defendant. An examination of that portion of the record discloses that many of defendant's answers were argumentative and not responsive. Finally the court observed that defendant, in the trial judge's opinion, was "deliberately evasive," and then immediately told the jury that he made that comment under his constitutional power to comment on the evidence, and directed defendant to answer the questions without argument or evasions. On the next day defendant's counsel made a motion for a mistrial based on this comment, and the motion was extensively argued out of the presence of the jury. The court, in the presence of the jury, denied the motion, and then gave a full, complete and lengthy instruction to the effect that the jury was the sole judge of the credibility of the witnesses. A similar instruction was given at the conclusion of the trial.

The comment probably should not have been made, but we cannot hold that, as a matter of law, the making of it constituted prejudicial misconduct. The statement as to the source of the power to comment, the prompt instruction to the jury on the effect of the comment, and the instruction at the end of the trial, cured any error that had been made. (*People* v. *Ottey,* 5 Cal.2d 714 [56 P.2d 193]; *People* v. *Van Wie,* 72 Cal.App.2d 227 [164 P.2d 290]; *People* v. *Robinson,* 73 Cal.App.2d 233 [166 P.2d 17]; *People* v. *King,* 30 Cal. App.2d 185 [85 P.2d 928].)

Defendant makes the contention, without specific assignment of error, that the trial court threw its weight behind the prosecution by occasionally taking over the examination of witnesses and by other actions. ■ The trial judge should, of course, be very careful to be a judge and not an advocate, and should not throw the weight of his judicial position against the accused. (*People* v. *Boggess,* 194 Cal. 212 [228 P. 448]; *People* v. *Cole,* 113 Cal.App.2d 253 [248 P.2d 141].) But the trial judge is not a sphinx. He is not

required to remain silent when, as the record here shows, counsel for the defendant was frequently obstructive, technical, and irritating in the manner of making and arguing his objections, and where, as the record also shows, defendant as a witness was in fact evasive and argumentative. Under the circumstances, the occasional comments of the trial judge, and his attempts to clarify the testimony, cannot be held to have prejudiced defendant improperly.

The defendant next contends that the trial court committed prejudicial error by forcing the jury to reach a verdict by threatening to send the jurors to a hotel for the night if they did not reach a verdict in half an hour. The trouble with this contention is that the facts upon which it is based do not appear in the record. The record shows that the case was given to the jury a little after noon. It deliberated for several hours, and twice returned to the courtroom for instructions. It again returned to the courtroom at 12:35 a. m. The trial court asked the jury how it stood, and was told that it had reached verdicts on two counts, but stood eleven-to-one on the other two counts. The trial judge then stated that he would give the jury the option of further deliberating or of going to a hotel for the night, and suggested that they return to the jury room to discuss the matter. It was ascertained from the jury, by agreement of counsel, that the jury was then undecided on the Pearce and Pothier counts. The jury returned at 1:37 a. m. with verdicts on all four counts, acquitting defendant on the Pearce count and convicting him on the Pothier count. ▪ The purported statements by the trial court which might constitute a threat or coercion, and which defendant's counsel claims were made, just do not appear in the record. Not being based on the record, and no steps to augment having been made, the point raised cannot and should not be considered.

▪ The last contention of defendant necessary to mention is his objection to the trial court permitting the accomplice Stanton to testify as to the facts of the crime as a prosecution rebuttal witness. Defendant urges that this evidence should have been introduced by the prosecution as part of its case in chief. The state argues that the defendant as a witness on his own behalf had repudiated the confession and that this evidence was offered to rebut the testimony of defendant. (See *People* v. *Gerbel,* 71 Cal.App.2d 325 [162 P.2d 946]; *People* v. *Moore,* 81 Cal.App.2d 799 [185 P.2d 32].) Probably this testimony of Stanton's, being directed to

the commission of the two Pelsinger counts, was technically part of the prosecution's case in chief. But defendant did not claim surprise, nor move for a continuance, nor ask to introduce further evidence. ■■■■ The trial court, of course, has wide discretion in permitting, upon motion, the prosecution to reopen the case in chief. This being so, no prejudicial error occurred in permitting the evidence. (*McBride* v. *Clara Barton Hospital*, 75 Cal.App. 161 [241 P. 941]; *Mastro* v. *City of San Diego*, 17 Cal.App.2d 331 [62 P.2d 407].)

The order and judgment appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.