[Crim. No. 5965. Second Dist., Div. Two. Oct. 2, 1957.]

THE PEOPLE, Respondent, v. RONALD EUGENE WALKER, Appellant.

*Assigned by Chairman of Judicial Council.

Brumer & Hopson for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

FOX, J.—A jury found defendant guilty of robbery. He appeals from the judgment and order denying his motion for a new trial.

In seeking a reversal defendant contends that (1) the evidence is insufficient to sustain his conviction; (2) the district attorney was guilty of misconduct; (3) the court prejudicially erred in its rulings; and (4) the jury was guilty of misconduct.

On October 13, 1956, at approximately 7 o'clock in the evening, the Safeway grocery store at Sunset and Sanborn Streets, in Los Angeles, was robbed by two men.

As the two men entered the store they were immediately observed by one of the checkers, Geraldine Ralston, who was "checking out" a grocery purchase near the store's entrance. Mrs. Ralston noticed that one of the men was about six inches taller than the other and that they were dressed in an unusual fashion. The taller man had on a long, dark overcoat; the shorter one was wearing a jacket. Both were wearing dark glasses and hats.

The taller of the two men approached a check stand and ordered the checker, Shirley Godbe, to empty the currency from the cash register near her into a paper bag. After she had complied, he told her to empty two of the other cash registers. While Miss Godbe was in the act of complying the man turned to Mrs. Ralston in the other check stand and

ordered her to give him the money in her cash register. This she did.

In the meantime, the smaller of the two men remained inside, near the store's entrance. Mrs. Ralston identified defendant as being the shorter of the robbers. After securing the money the two men ran out of the store into the parking lot and escaped.

Later that night, and again the next day, Mrs. Ralston was shown some photographs by the police but she was not able to identify any of them as being a picture of either of the robbers. On November 5th, however, Mrs. Ralston did identify a picture of the smaller man. Later that evening she attended a police line-up of 54 men and identified the defendant as being the shorter of the two robbers.

Mrs. Fleming, a customer, who was being checked out by Mrs. Ralston, also identified defendant as the shorter man. She testified that she only saw the defendant as he entered and left the store and that she paid more attention to the taller man because he was standing right by her and Mrs. Ralston. She testified also that she was concerned primarily with identifying the taller man when the police showed her pictures of possible suspects, and that after identifying the taller man the officer told her that another picture was of the shorter robber. Up to that time she had not identified the latter photograph as a picture of defendant.

Defendant denied any connection with the robbery. His wife and three of his in-laws testified that on the night in question he had been at the home of his wife's parents in El Monte, some 30 miles from the store that was robbed, from approximately 6:45 in the evening until almost 11 o'clock that night. However, Officer Lightner, of the Los Angeles Police Department testified that on November 8th defendant's mother-in-law, Mrs. Helen Ormande, told him in a telephone conversation that defendant dropped his wife off at the Ormande home about 5:30 p.m. on the night of the robbery, left and did not return that night.

In further support of defendant's noncomplicity in this robbery, Donald Reinke and Charles Mackley testified they were the two men who committed the robbery and that defendant was not involved in it.

The law is settled that a reviewing court "will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to deter-

mine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground'' of insufficiency of the evidence, ''it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.'' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) More recently it has been held that ''The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt.'' (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) Also, it is for the jury to determine the credibility of the witnesses and the reasonable inferences that should be drawn from their testimony. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].) Conflicts and inconsistencies in the evidence are to be resolved by the jury, too. (*People* v. *Frankfort,* 114 Cal. App.2d 680, 692 [251 P.2d 401].) ''This rule also applies to conflicts and inconsistencies in the testimony of an individual witness.'' (*Peterson* v. *Peterson,* 74 Cal.App.2d 312, 319 [168 P.2d 474] ; *Showalter* v. *Western Pac. R.R. Co.,* 16 Cal.2d 460, 479 [106 P.2d 895] ; *People* v. *Hill,* 126 Cal.App.2d 378, 380 [272 P.2d 113].)

Applying these principles to the facts at hand, it is clear there is ample evidence of defendant's identification as a participant in this robbery. He was identified as such by both Mrs. Ralston[1] and Mrs. Fleming.[2]

---

[1]Mrs. Ralston testified in part as follows:

''Q. Now, in so far as the short man is concerned, do you see that short man now in the courtroom? A. Yes, I do.

''Q. Will you indicate him for us, please? A. It's Mr. Walker. (Indicating.)

''Q. Indicating this defendant? A. Yes, sir.''

[2]''Now, if you were called upon now to look around the courtroom and see if you could identify either one of those men, could you do it, Mrs. Fleming, from what you recall? A. One, yes.

''Q. Which one? A. Him (indicating), right there.

''Q. All right. Indicating the defendant. A. Yes.

[Footnote continued on next page.]

Defendant attacks the testimony of both of these witnesses. He characterizes Mrs. Ralston's identification of him as inherently improbable, impossible and unbelievable. He bases this attack on Mrs. Ralston's testimony upon her statement that she could see only his chin, mouth and "about half way down the bridge of his nose" due to the way he had the brim of his hat pulled down, his jacket collar turned up, and the obstruction of his dark glasses. She sensed this was a holdup before any demand was made upon her for the money in her cash register. It is therefore a reasonable inference that she put forth a special effort to remember these men. That she was unusually observant is indicated by the fact that she recalled defendant's shoes "were blue suede with a wedge heel" and that on November 5th, at the police line-up, she noticed that he was wearing "similar shoes." She stated, "The shorter one walked just inside the door, just before you get to the turnstile there, and stood facing the back of the store." She looked at him "15 or 20 seconds." The reliability of her identification was for the jury's determination, and by their verdict they impliedly found that it was trustworthy, and neither impossible nor unbelievable as defendant argues. There is obviously no basis for holding that Mrs. Ralston's testimony identifying the defendant is inherently impossible. "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]" (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758].) A mere statement of the principle demonstrates its inapplicability here.

 Defendant argues that Mrs. Fleming's testimony was no identification of him at all because she only glanced at him as he came into the store and went out and she was unable to see his features because of the manner in which he was dressed and that the police induced her to identify a picture of him by telling her "This is the other man here"; viz., the defendant. On this background, defendant further argues that the district attorney was guilty of misconduct in

---

"Q. Is this the man, that I have my hand behind his head? Is that the man you were talking about? A. Yes.

"Q. Now, in identifying him, you identify him as which, the taller or the shorter one? A. The shorter one."

She also stated: "I looked at him [the taller one] very close. But as I say, when they both walked in, I took notice to this man here [defendant], too."

arguing to the jury that there were two identifying witnesses and that the court erred in refusing to advise the jury that there was only one identification of the defendant. His position is not well taken. Mrs. Fleming did identify the defendant from the witness stand (see footnote 2, *supra*). She also explained fully the circumstances under which she saw defendant and those under which she identified a picture of him. It was therefore for the jury to determine the weight that should be accorded Mrs. Fleming's testimony. And since her identification was in the record it was not improper for the district attorney to argue that there were two identifying witnesses of defendant. In such a state of the record it would have been improper for the trial court to advise the jury that there was only one identifying witness. To have done so would have been to take from the jury their exclusive fact-finding prerogative.

In support of his motion for a new trial, defendant filed an affidavit by Mrs. Fleming in which she stated, *inter alia*, "I did not have an opportunity to observe his features and therefore could not identify him [the defendant] . . ." She also repeated the substance of her testimony at the trial to the effect that a police officer showed her a picture of defendant and stated that he was the short man involved in the holdup. Officer Lightner, who was one of the investigating officers in this case, filed an affidavit stating that at his request Mrs. Fleming was requested to examine approximately a dozen "mug shots" and that her identification was "uninfluenced in any way by the investigating officers." Defendant insists that since, by her affidavit, Mrs. Fleming repudiated her testimony identifying him it was incumbent on the court to grant his motion for a new trial. This, however, does not follow. At that stage of the case the trial court was called upon to exercise its judgment and judicial discretion in evaluating the affidavits along with the entire record. In so doing, the court reached the conclusion that defendant's motion for a new trial should be denied. This means that the court approved the jury's verdict which included its implied finding that there was adequate evidence to establish defendant's identification as one of the holdup men. No abuse of discretion appears. In the absence of such a showing, a reviewing court may not upset the ruling.

Defendant points out that four witnesses supported his alibi that he was at the home of his wife's parents the entire evening of the robbery. These were his wife, her parents,

and his brother-in-law. In evaluating their testimony the jury was entitled to take into consideration this family relationship and the likely bias in his favor because of it. (*People* v. *Gould,* 111 Cal.App.2d 1, 6 [243 P.2d 809]; *People* v. *Payton,* 36 Cal.App.2d 41, 45 [96 P.2d 991].) Furthermore Mrs. Walker's mother was impeached by her prior statements to Officer Lightner that defendant had dropped his wife off at her parents' home about 5:30 p. m. on the evening in question and had not returned that night. There was, therefore, ample basis for the jury's failure to give credence to defendant's alibi plea.

In an attempt to demonstrate his lack of complicity in this robbery, defendant produced Donald Reinke and Charles Mackley (the taller of the two robbers), who testified they committed the holdup in question and that defendant had nothing to do with it. Reinke had four prior felony convictions and Mackley two. These convictions tended to impeach their credibility. (Code Civ. Proc., § 2051; *People* v. *Peete,* 28 Cal.2d 306, 321 [169 P.2d 924].) Consequently there was sufficient justification for the jury not to accept their testimony as true.

Defendant charges the prosecutor was guilty of misconduct in his argument to the jury to the effect that in his opinion under the law and the evidence the defendant was guilty. Defendant is in no position to raise this point on appeal since he made no objection at the time and did not request an admonitory instruction. This identical problem arose in *People* v. *Hampton,* 47 Cal.2d 239 [302 P.2d 300]. At pages 240-241 the applicable principle is stated in this language: "The rule is established that unless the harmful results of misconduct of the district attorney cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error; and (b) a request to the trial court to instruct the jury to disregard it. [Citations.]" Here an objection and appropriate instruction from the court to the jury to disregard the asserted misconduct would have obviated any prejudicial effect that the alleged improper remarks might have had. (*People* v. *Hampton, supra,* p. 241.)

Defendant was required to stand beside Reinke and Mackley so that the jury could see their relative heights and sizes. He now argues that "by such association the passions and prejudices of the jurors were raised." The

complete answer to this argument is that when this request was made defendant's counsel said, "All right." Having consented to such procedure in the trial court he is in no position to question its propriety on appeal.

▪ Defendant charges misconduct on the part of the prosecutor because he read to the jury during their *voir dire* examination the allegation in the information that defendant had suffered a prior felony conviction which he had denied. There is no merit in this contention for two reasons. In the first place, this matter had been adverted to already by defendant's counsel. He had stated: "In the course of the trial, the fact may come out that this defendant was convicted of a crime years ago." He then inquired whether that fact could create bias or prejudice in their minds against his client. It was following this reference by defendant's counsel that the prosecutor mentioned defendant's alleged prior conviction and read the allegation to the jury and explained that defendant had denied this allegation[3] and that it was an issue for the jury to decide. The prosecutor also mentioned that a witness may be impeached by a showing that he had been previously convicted of a felony.[4] In the second place, the defendant made no protest or objection to the comments and questions of the prosecutor along this line of inquiry. Obviously he cannot raise the point for the first time on appeal. (*People* v. *Hampton, supra*; *People* v. *Lamendola*, 119 Cal.App.2d 570, 573 [259 P.2d 982].)

One of the prosecution witnesses was Miss Godbe, a checker, who was forced by Mackley to empty the cash out of three of the cash registers. She described the circumstances of the robbery but testified she did not have sufficient recollection of either of the robbers to identify them. She had been, however, to a police line-up and picked out a man whom she thought looked like the taller robber. ▪ This man was neither Mackley nor defendant. Attempt was made by counsel for defendant to interrogate her about her identification of the taller robber at the police line-up. The court sustained an objection to this line of interrogation on the ground that it was irrelevant insofar as defendant was concerned since he was the shorter of the two robbers and the

---

[3] Prior to taking evidence defendant, out of the presence of the jury, admitted the alleged prior conviction.

[4] On cross-examination for purpose of impeachment inquiry was made of defendant as to whether he had suffered a prior felony conviction. He admitted such prior conviction.

proffered testimony dealt with Miss Godbe's asserted identification of a man other than Mackley as the taller robber. The ruling was correct. In this connection defendant also offered to prove that the police attempted to coerce Miss Godbe into identifying Mackley as the taller robber. This offer was rejected because it dealt with her attempted identification of Mackley and not with an attempt to identify the defendant. Hence it was not relevant. None of this proposed testimony affected defendant since Miss Godbe at no time stated she could identify defendant as one of the robbers.

Defendant argues that the court prejudicially erred by refusing to allow him to use certain asserted police reports to impeach Mrs. Ralston and Mrs. Fleming and to refresh the police officers' recollection of having been told by Mrs. Fleming that she could not identify the shorter robber. Counsel for defendant concedes that none of this material appears in the record. We are therefore in no position to consider it.

The statement of counsel for defendant in both his opening and closing briefs to the effect that the court subordinated its opinion on the admissibility of evidence to that of the prosecutor's is without justification. This type of argument is of no assistance to an appellate court for we are simply called on to pass upon the correctness of the rulings—not who was the most persuasive with the trial judge.

 In support of his contention that the jury was guilty of misconduct during their deliberations, defendant relies on the affidavit of juror Hazel Kiesel. She stated, *inter alia,* that she never was convinced that the People proved their case beyond a reasonable doubt; that in voting for a verdict of guilty she relied on the decision of her fellow jurors rather than on her own opinion, and that some of the women on the jury relied on ''women's intuition'' in reaching a verdict. She recited other equally irrelevant and improper considerations which she asserted influenced other jurors in arriving at a verdict of guilty. She also stated that ''juror Robert T. Mollison left the room for approximately ten minutes, and upon return changed his vote to guilty.''

 Bailiff Frank O. Hogan, who was in charge of the jury, and juror Mollison filed counteraffidavits denying there was any separation of the jurors. These affidavits are sufficient to support the implied finding that there was no improper separation of the jury during their deliberations.

The affidavit of Juror Kiesel as to the manner in which the

verdict was reached was an obvious attempt to impeach the verdict. ■ But the law is settled in this state that jurors cannot impeach their verdict "by affidavit or by testimony or by extrajudicial statements" other than that it was arrived at by chance. (*People* v. *Reid,* 195 Cal. 249, 261 [232 P. 457, 36 A.L.R. 1435]; *People* v. *McCaffrey,* 118 Cal.App.2d 611, 621 [258 P.2d 557]; *People* v. *Blau,* 140 Cal.App.2d 193, 217 [294 P.2d 1047].) And affidavits of jurors attempting to impeach their verdict, except on the ground that it was a "chance" verdict are incompetent and cannot be considered by the court. (*People* v. *Gidney,* 10 Cal.2d 138, 141 [73 P.2d 1186]; *People* v. *Long,* 15 Cal.2d 590, 608 [103 P.2d 969].)

The judgment and order denying defendant's motion for a new trial are affirmed.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied October 25, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 26, 1957.