[Crim. No. 7422.   Second Dist., Div. Two.   July 21, 1961.]

THE PEOPLE, Respondent, v. ROSARIO FRANK TORNELLO, Appellant.

Harrison M. Dunham, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Otto J. Hetzel, Deputy Attorney General, for Respondent.

HERNDON, J.—A jury found appellant guilty of robbery in the first degree. He appeals from the judgment of conviction and from the order denying his motion for a new trial. His sole contention is that the evidence is insufficient as a matter of law to sustain his conviction. He urges that "all the evidence points conclusively to the fact that appellant is the victim of mistaken identity." This contention is without merit as a brief recital of the salient facts will show.

On March 20, 1960, Charles Kamenar was the manager in charge of a liquor store in Encino, California, known as "Edward V." At approximately 10 o'clock a.m. on that day a man entered the store, purchased a pack of Marlboro cigarettes and departed. About 10 minutes later the same man reentered the store and asked for a bottle of Johnnie Walker Scotch liquor. When Kamenar opened the cash register to make change, this man produced a gun and ordered him to go to the rear of the store.

In the rear of the store the gunman forced Kamenar to lie face down on the floor, and then proceeded to tape his hands behind his back with 1-inch adhesive tape. After about 15 minutes, Kamenar freed himself, went back to the front of the store and found that approximately $180 had been taken from the cash register and that some scotch liquor had been taken also.

Kamenar's testimony identifying appellant as the robber was positive and unqualified.[1]

In his report to the police, given shortly after the robbery, he described the robber as follows: "A male Caucasian; fifty-five to sixty; five feet six inches; 160; gray hair; black eyes; dark complexion; gray suit and hat; rough looking features; clean shaven; possibly Italian." Apparently the foregoing was fairly descriptive of appellant's physical characteristics. It does not appear that appellant has questioned its essential accuracy.

Kamenar testified that at the time of the robbery appellant was dressed in a gray-striped suit which appeared to be cleaned and well pressed. He was wearing a narrow-brim hat. The suit described by Kamenar was similar in appearance to one which the police found in appellant's clothes closet and which was placed in evidence.

About two weeks after the robbery at a police lineup Kamenar picked appellant out of a lineup of four individuals. Here again Kamenar's identification of appellant as the robber was immediate and positive. He heard appellant speak and observed that appellant's voice was similar to that of the robber.

Appellant took the stand and denied any complicity in the robbery. He testified to the following effect: that he spent the entire morning of March 20, 1960, from about 9 a. m. until afternoon at the home of one Jimmy Durkin in Tarzana, California; that he had a date with Durkin to repair his automobile that morning; that he had never been to the "Edward V" liquor store and didn't know its location; that he was wearing a pair of slacks and a sport shirt, and that he had not worn his gray suit since September of 1959 because there were burned holes in the leg of the trousers.

---

[1]Kamenar testified in part as follows: "Q. You understand that this charge of robbery, a stickup, using a gun, is a very serious charge, don't you? A. Yes, sir. Q. As you sit in this court room today and under oath, is there any doubt in your mind at all that this is the man that stuck you up, or robbed you? A. No. I'm positive."

The defense called four friends and acquaintances of appellant who testified that they saw appellant at the Durkin residence in Tarzana at various times during the morning of March 20th between 9 a. m. and noon. Three of these witnesses testified that they first saw appellant at about 10 a. m. or a few minutes later. One of the four witnesses testified that she first saw appellant at the Durkin residence at about 9 o'clock a. m., and again at various other times during the morning in question. These defense witnesses also testified that appellant was casually dressed in slacks and a sport shirt. Mr. Durkin corroborated appellant's testimony that arrangements previously had been made for Durkin to work on appellant's automobile on March 20, 1960.

Appellant urges that "the identification of appellant by the victim Charles Kamenar is subject to serious question" and that the testimony of said witness "should be viewed with extreme caution." He submits that the testimony of his witnesses "establishes beyond any question of a doubt the fact that it was an absolute impossibility for the appellant to have been in the Edward V liquor store at the hour of 10 o'clock a. m. on March 20, 1960, and to have committed the robbery."

Manifestly, appellant is asking this court to reweigh the evidence and to reject the testimony of a prosecution witness which the jury, by its verdict, impliedly found to be trustworthy. But as stated in *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]: "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]" The record in this case furnishes no semblance of a basis upon which to predicate a holding that the testimony of the witness Kamenar identifying appellant as the robber is inherently impossible or improbable.

In *People* v. *Whitson,* 25 Cal.2d 593 [154 P.2d 867], the appellant was convicted of robbery. He was identified by the testimony of only one person. In affirming the judgment of conviction, the Supreme Court rejected contentions identical with those advanced by appellant here. Numerous other cases involving similar factual situations demonstrate the untenability of appellant's arguments. (See *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Harmon,* 117 Cal.App.2d 511, 513 [256 P.2d 340]; *People* v. *McNeal,*

123 Cal.App.2d 222, 224 [266 P.2d 529]; *People* v. *Walker,* 154 Cal.App.2d 143, 147, 148 [315 P.2d 740]; *People* v. *Perryman,* 184 Cal.App.2d 387, 389 [7 Cal.Rptr. 534].)

"The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)

It is the sole province of the jury to determine the credibility of the witnesses and the reasonable inferences that should be drawn from their testimony. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835]). Conflicts and inconsistencies in the evidence are to be resolved by the jury. (*People* v. *Frankfort,* 114 Cal.App.2d 680, 692 [251 P.2d 401].) The instant record contains substantial evidence which is unquestionably sufficient to support the conclusions of the jury.

The judgment and the order denying appellant's motion for a new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.