[Crim. No. 1767. Third Dist. Oct. 7, 1941.]

THE PEOPLE, Respondent, v. WAYNE PEYTON et al., Defendants; LESLIE STINSON, Appellant.

216

Luke Howe for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THOMPSON, J.—The appellant was jointly charged with Wayne Peyton, under section 211 of the Penal Code, with the crime of robbery accomplished by means of force and fear. Both defendants pleaded not guilty. In the progress of the trial, after much incriminating evidence had been adduced, Peyton withdrew his plea of not guilty and entered a plea of guilty of the offense charged. Neither defendant became a witness at the trial. The appellant was convicted. A motion on his part for new trial was denied. He was thereupon sentenced to imprisonment in state prison for the term prescribed by law. From the order denying his motion

for new trial and from the judgment of conviction Leslie Stinson has appealed.

It is contended the verdict and judgment are not supported by the evidence, chiefly for lack of proof positively identifying the appellant as the individual who participated with Wayne Peyton in perpetrating the hold-up. It is asserted the motion for new trial on the ground of newly-discovered evidence should have been granted. A reversal of the judgment is also sought on account of alleged errors committed in the admission of testimony over the objections of the appellant during the course of the trial.

The robbery consisted of a hold-up at the tavern of Louis M. Lasell at number 2317 Broadway, Sacramento, at about half-past two o'clock on the afternoon of February 7, 1941, by two masked and armed men. They stole a sack of coin and greenbacks containing $1,200. Mr. Lasell, the proprietor of the tavern, was in the habit of cashing pay-checks for the defendants and other persons which were usually presented to him on Friday. Both defendants frequented his place of business and knew he usually provided himself with cash on that particular day for the purpose of accommodating his customers. On the afternoon of Friday, the 7th day of February, Mr. Lasell withdrew from the bank several hundred dollars which he brought to his place of business about two o'clock. It was contained in a canvas sack which he placed on a desk in his office in the tavern. He locked the door of that room and proceeded to wait on customers at the bar. There were about three customers present at that time.

Wayne Peyton worked at the Capital Box Company's factory at Sacramento. On the second floor of that building a large quantity of shook was stored. The appellant, Leslie Stinson, worked at a sheet metal factory in Sacramento. The defendants were friends and associates. The appellant owned a new, green De Soto sedan automobile. Neither of the defendants worked on February 7th. Peyton was seen at the box factory at 10 o'clock in the morning, but left at that time. He was again seen to enter the plant after the robbery about 4 o'clock in the afternoon and went to the second floor of the factory where the shook was stored, after which he again left the premises. The appellant, Stinson, on the evening of February 6th, told Mr. McLaughlin, the

superintendent of the Sheet Metal Works, where he was employed, that he would not work the following day because he had to take treatment for an ailment at a doctor's office. Mrs. Cook, who lived with her family in the neighborhood of the tavern, testified that Stinson, who frequently visited in their home, drove his new sedan car to their residence about two o'clock on the afternoon of February 7th, and asked her to loan him a rifle, saying that he was going to hunt for jackrabbits. She told him to go to the closet and help himself. He took a .32 caliber rifle and a shot-gun and immediately drove away. At 11 o'clock that same day, a neighbor by the name of Grace Radovich saw two men carefully inspecting the alley adjacent to the tavern. They drove up in a new car. She described one as a tall man and the other as a short man. The driver of the car got out and went down the alley. After a few moments they drove away. It appears that Peyton is a tall man and that Stinson is comparatively short in stature. Both defendants entered the tavern during the forenoon of that day and drank at the bar.

At about two-thirty o'clock in the afternoon of February 7th the defendant Peyton suddenly entered the tavern through a side door armed with a revolver in each hand. He had a mask of white fabric over the lower portion of his face and he wore dark glasses. At the same time a short, small man, similarly masked and carrying a shot-gun covered with burlap, entered the front door and, taking a position behind a table at the side of the room, removed the burlap from the gun and pointed toward the men at the bar. Peyton commanded the proprietor, Louis Lasell, and the customers who were present, to throw up their hands and to get into an adjacent lavatory "lively if they didn't want to get hurt." They did so. He then entered the back room and ushered Mrs. Lasell into the same lavatory at the point of a revolver, telling her it was a "hold-up." Finding the door of the office locked, he opened the lavatory door and demanded the keys from Mr. Lasell. Because Lasell did not comply with his demand speedily enough to suit him, he violently struck him in the face with his revolver and seriously injured him. He then unlocked the door to the office and seized the canvas sack of money. The two robbers hurriedly left and drove away in Stinson's car which contained a license plate num-

bered 82 B 844. During the hold-up the car was parked in or near the alley where soft mud had accumulated from recent rains.

At fifteen minutes past three o'clock on that day both defendants drove together in Stinson's car into a Sacramento garage and asked the mechanic, Louis Savio, to hastily change the 1940 license plates on appellant's car for new 1941 plates which were in their possession. The old plates, which were then on his car, were numbered 82 B 844. Mrs. Lola McIntyre, a lady who lived adjacent to the tavern in question, was in the alley and saw the armed robbers rush from the saloon and drive away in that machine. The haste with which they departed and the fact that she saw one of them carrying a gun, led her to become suspicious of them, and she therefore took pains to observe the number of their license plate which number she at once reported to Mr. Lasell and which information was promptly furnished to the officers, who subsequently identified the car from that number and apprehended the defendants on the same day the robbery was committed. When the defendants appeared at the garage they were in great haste. The mechanic testified that Stinson said "he was in an awful hurry to go down and get his check," and that he wanted "one of my mechanics to help me change the plates so he could get them off that much sooner." The mechanic also testified that Peyton then said "it took an awful long time to change the plates." Evidently they were very impatient and anxious to change the plates and to get away speedily from the garage.

Mr. C. A. Conry, who was working at the Cook residence that day, from which Stinson borrowed the guns, testified that the appellant returned both the rifle and the shot-gun the same day at about 3 or 3:15 o'clock that afternoon, and saw him extract the shells from both guns and replace the guns in the closet. He then asked Stinson what luck he had in hunting. Stinson told him that he got one "jack." That statement was evidently false. He had the guns in his possession only about an hour and a half, and he had no time to go hunting for jackrabbits in that brief period of time. Evidently he did not go hunting. The guns were procured and received in evidence at the trial. They were identified as the same ones he borrowed from Mrs. Cook.

When the defendants were arrested and the car was searched on the evening of February 7th, the officers discovered in it a piece of cheesecloth which a witness identified as similar to the material from which the masks of the robbers were evidently made. The officers also found in the car both rifle and shot-gun shells which fitted the guns that were borrowed from Mrs. Cook.

A few days after the robbery a workman discovered the canvas sack containing some of the money which was stolen at the tavern, together with a revolver, hidden in a stack of shook on the second floor of the box factory. Evidently Peyton concealed them in that place at four o'clock on the day of the robbery, when he was seen to enter the factory where he was accustomed to work, and to go to the second floor of the building.

One other incident tends to connect the appellant with the robbery. It appears that the car was parked during the hold-up 'in or adjacent to the alley where the ground was composed of soft mud. Two witnesses testified that when the defendants were arrested late that afternoon there was clearly visible on Stinson's shoes some mud which was not yet dry. The appellant was also impeached by several contradictory statements regarding material facts. He made a statement to the officers, positively denying that he had been in the company of Peyton on the day of the robbery. He denied that he knew anything about the mask material or the cartridges which were found in his machine, and he asserted that no one but himself had ever driven his car. Yet the proof is positive and undisputed that his machine was used in perpetrating the robbery and that Peyton drove the car. Peyton was positively identified by eye witnesses when his mask fell from his face in the course of the hold-up. Stinson was recognized as corresponding in size, weight and height to the other "short man" who participated in the robbery.

The record contains an abundance of evidence identifying the appellant as the man who participated with Peyton in perpetrating the robbery of which he was convicted. There can be no reasonable doubt he was the person who assisted in carrying out the hold-up. The verdict and judgment are adequately supported in that regard.

The court did not err in overruling appellant's objection to the testimony of Youngblood, an employee at the

box factory where Peyton was employed, that he was acquainted with both defendants and that Peyton left his work at the factory at ten o'clock on the day of the robbery and returned to the factory and went up to the second floor of the building where the shook was stored and where the sack of money and revolver were found at four o'clock that same day.

The evidence was competent as tending to show the identity of Peyton's associate in the commission of the crime and that the defendants had previously planned to perpetrate the robbery on that day. Stinson had told the superintendent at his sheet-iron plant the night previous to the robbery that he was not going to work on that day because he had to take treatment from a doctor. It also appears he did not go to work on February 7th. The evidence shows that both of the defendants were seen at the tavern on the morning of the last-mentioned day. The evidence is undisputed that they appeared together in Stinson's automobile at the garage after the commission of the offense. The conduct of Peyton with relation to his absence from work is a circumstance tending to show the defendants previously planned to commit the robbery. The court properly admitted evidence of those facts.

 The court did not err in admitting evidence of the discovery of the bag of money and the revolver which were hidden in the pile of shook at the factory. That evidence is also competent. The concealing of the stolen money and the weapon which was used in the robbery was evidence of the guilt of the perpetrators. It is immaterial that Peyton probably hid them in that place. If Stinson was the "short man" who assisted in the hold-up, he was an accomplice in the crime with Peyton and therefore guilty as a principal under the provisions of section 31 of the Penal Code. The hiding of the stolen money and the weapon, regardless of which participant did so, is therefore equally competent as against either defendant.

 The court did not err in admitting in evidence the shot-gun and the rifle which were borrowed by Mr. Stinson from Mrs. Cook on the day of the robbery. They were procured by the officer from Mrs. Cook and fully identified as the guns which were borrowed by the appellant. Nor

did the court err in permitting the officer to testify that he found in Stinson's automobile cartridges which fitted both guns. It is a circumstance tending to show the appellant was connected with the robbery. His machine was positively identified as the one which was used by the robbers. At the time of the robbery, Lola McIntyre saw them hastily get into the machine and flee from the premises. She saw the short man get into the rear seat with a gun in his hand. That evidence was therefore competent.

We are of the opinion the court did not abuse its discretion in denying appellant's motion for a new trial which was presented on the ground of newly-discovered evidence under section 1181, subdivision 7 of the Penal Code, for the reason that by the exercise of reasonable diligence the defendant evidently could have adduced the alleged new evidence at the trial.

The affidavits on motion for new trial fail to allege the exercise of diligence to procure during the progress of the trial the new evidence relied upon. The purpose of the new evidence was to show that Stinson was not present and that he did not participate in the robbery. He did not take the witness stand at the trial to deny that he participated in the crime. Nor did he call to the stand his co-defendant for that purpose. Neither of the defendants took the stand in his own behalf. Certainly, when Peyton withdrew his plea of not guilty after the trial was partly completed, and entered a plea of guilty, Stinson then had the opportunity of calling him as a witness to prove all the facts relied upon in the affidavits for new trial. It has been held the affidavits must show by proper allegations that the defendant had no knowledge at the time of trial of the facts relied upon. The fact that the defendant believed his accomplice to be unfriendly or that he would not tell the truth furnishes no excuse for failure to call him as a witness. (*People* v. *Farber*, 19 Cal. App. (2d) 189, 192 [64 Pac. (2d) 1138].) It is self-evident in this case that Peyton knew who his associate in the perpetration of the crime was, and that Stinson was bound to presume he had that knowledge. After Peyton pleaded guilty and there was no longer a valid reason for him to conceal the identity of his accomplice, he should have been promptly called by Stinson to disclose that fact. He was actually present in the court room and could have been

called to the stand. The failure to do so is proof of a lack of diligence on the part of the appellant.

 Moreover, the affidavits on motion for the new trial present sufficient conflict regarding appellant's contention that Ward and not Stinson participated with Peyton in perpetrating the robbery to warrant the court in denying the motion. Indeed, the truthfulness of appellant's alleged new evidence is open to grave suspicion. The testimony adduced at the trial is very convincing that Stinson was the man who participated in the crime. The record leaves little doubt of that fact. The appellant's affidavit on motion for new trial does not state that he did not participate in the robbery. It merely recites that he did not know that Manuel Ward was the man who assisted Peyton in the crime until after the appellant had been convicted of that crime by the jury. It is possible that three men participated in the crime. No facts are stated to indicate that Stinson exercised diligence to obtain that evidence at the trial. The record disclosed the fact that he exercised no diligence in that regard. The affidavit of Peyton merely avers that "Manuel Buster Ward is the person who aided and participated with him in the robbery." Likewise, the affidavit of Ward merely avers that he assisted Peyton in robbing Lasell. It is a belated and suspicious confession coming from an incarcerated convict who admitted that he had nothing to lose thereby. Ward was a close friend of Peyton, having previously served a sentence with him in state prison, and he was imprisoned in the same cell at the Sacramento County jail with Stinson and Peyton just prior to the motion for new trial. The belated confession under such circumstances is evidence that it was not prompted by conscientious scruples to tell the truth and to save an innocent man from unjust punishment. The counter-affidavit of James Lyons, a police officer, refutes the fictitious admission of guilt on the part of Ward. In the presence of two highway patrol officers, Lyons interviewed Ward a few days prior to the time of the motion for new trial, regarding his recent participation in criminal offenses in Sacramento County. Ward then positively assured him that he was never involved in any robberies in Sacramento County, with the exception of one which he perpetrated November 23, 1940, and one other robbery which occurred "one or two days later." Ward also stated that he had never

robbed a barroom or a café, or any premises except ''service stations.'' That amounts to a complete denial that he assisted Peyton to rob the Lasell tavern on February 7, 1941. The court was warranted in disbelieving the affidavit of Ward under the circumstances of this case, and in denying the motion for new trial.

■ The rule is well established that courts will not grant new trials under subdivision 7 of section 1181 of the Penal Code except upon clear and satisfactory showings that alleged newly-discovered evidence is material, not cumulative, previously unknown to the defendant and that he is not guilty of lack of diligence in failing to produce it at the trial. It must also appear to the court that the evidence relied upon would have been likely to have caused the jury to reach a different conclusion regarding the guilt of the defendant. It is said in 8 California Jurisprudence, section 452, at page 427, in that regard:

''The claim of newly discovered evidence warranting a new trial is universally looked upon by the courts with distrust and disfavor. Public policy demands that a litigant should be compelled to exhaust every reasonable effort to produce at his trial all existing evidence in his behalf. It has been said that the circumstance that the testimony has just been discovered when it is too late to introduce it is so suspicious that courts require the very strictest showing of diligence.''

We are convinced there was no miscarriage of justice in the conviction of the appellant in the present case.

The judgment and the order are affirmed.

Pullen, P. J., and Tuttle, J., concurred.