[Crim. No. 3801. Second Dist., Div. One. Sept. 20, 1944.]

THE PEOPLE, Respondent, v. PAUL J. VEST, Appellant.

Philip S. Schutz for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, appellant, Paul J. Vest, was accused jointly with one Joe L. Parra of the crime of burglary. As to appellant, the information also charged two prior convictions. After entry of not guilty pleas by both defendants and the admission of the prior convictions by defendant Vest, the cause proceeded to trial before a jury, resulting in the conviction of each defendant of the crime of burglary of the second degree. Both defendants moved for a new trial and their motions were denied. Whereupon they were sentenced to state prison for the term prescribed by law. From the judgment of conviction and from the order denying his motion for a new trial, defendant Vest alone prosecutes this appeal.

Because the sufficiency of the evidence to support the judgment is challenged upon this appeal, it becomes necessary to summarize the evidence produced at the trial. The record reflects that one Henry Lum Park was the owner and operator of a business at 4403 South Main Street in the city of Los Angeles, wherein he handled groceries, meats and liquor. Appellant was the owner and operator of a gas station at 45th and Main Streets, a short distance from the aforesaid store.

The store owner testified that he had known appellant for some two years, during which time he was a customer of appellant and the latter also purchased merchandise from Mr. Park. Mr. Park also testified that he was acquainted with the defendant Parra for some six months. On the evening of June 25, 1943, about 7:45 o'clock, Mr. Park saw appellant in his store and observed the defendant Parra on the outside in an alley at the rear of the store. On the occasion in question, Mr. Park was waiting upon a customer when appellant came in and said "Henry, give me a match." The witness replied, "O.K." and gave him a match, which appellant accepted. Appellant then went outside and lit his cigarette. In a few seconds, appellant returned to the store and started toward the ice box at the rear thereof, when the store owner inquired of him "What do you want to do Paul?" to which appellant replied "Oh, you Chinaman with a Jap's face." Mr. Park testified that this was a facetious remark which appellant had addressed to him from time to time in a joking manner. Appellant then walked through a door into the rear room, and after entering the room shut the door. Two or three seconds after this had occurred, the store owner heard his alarm clock fall to the floor from a shelf where it had been placed. At this time, Mr. Park called out "Paul, what are you doing inside for? I got everything outside here. I wait on you right here." The witness testified he received no reply from appellant. About that time, a Miss Ethel Moe, to whose testimony we shall later refer, came to the front door of the store and talked to the proprietor thereof. Following this conversation, the storekeeper went into the room where his liquor was stored and found there were four cases of whiskey missing. He described one of these cases as containing pint-size bottles of certain brands of whiskey packed in a carton which was labeled "Black Gold." Upon discovering his loss, the store proprietor went immediately to the rear door, which he found wide open. At this time, it was daylight, but the witness testified that he saw no one in the alley back of the store. The store proprietor, however, testified that before appellant had gone into the rear room, he had bolted the aforesaid door from the inside.

Mr. Russell Sleiker testified that on the evening and at the time in question, he was in Mr. Park's store. He testified that while there he saw the appellant Vest, whom he knew, in the

store. He corroborated the store owner's testimony that appellant came in and asked for a match, immediately went out, and a few seconds later reentered, going directly to the rear of the store. This witness testified that when appellant returned to the store, he went straight back to the ice box, that Mr. Park followed appellant back there and in two or three minutes they both came out together, stopped at the ice box, had a conversation and that thereupon the store owner came toward the front of the store, while appellant went back to a small aisle and through another door.

Miss Ethel Moe testified that she resided at 114 West Vernon Avenue; that she was acquainted with appellant, who lived in the same block; that she was familiar with the store owned and operated by Mr. Park. She testified that in the rear of the store is a driveway, or alley, which is located directly opposite her house. That her bedroom window faces the rear of the store. She estimated the distance as about 36 feet from the side of her house to the door in the back of the store. This witness further testified as follows:

"Q. And did you see anything unusual that took place there in the backyard of that store of Park? A. Yes I did.

"Q. Will you relate what it was that you saw? A. First Mr. Vest and Mr. Parra drove in the alley in a car. Then they backed out of the alley. Then Mr. Parra walked in the alley alone and later Mr. Vest came in and called to him and said, 'Hey, Joe, let's go.' Then they talked for a while out there, and then they both walked out of the alley and then Mr. Parra came in the alley by himself, and then he went in the store and carried out boxes.

"Q. How many boxes did you see Parra carry out? A. The first time I saw him take one, and the second time I saw him take two.

"Q. Two at one time? A. One on top of the other.

"Q. And did you see him take any more? A. No.

"Q. In other words, you saw him take three boxes? A. Yes.

"Q. Do you know what the boxes or cases that whiskey comes in look like? A. I did not. It just said, 'Black Gold' and I didn't know what was in the box.

"Q. Did you see the name 'Black Gold' on some of the boxes? A. On the first one.

"Q. Just one? A. Yes.

"Q. Do you recall any names that you saw on any of the others? A. No."

This witness further testified that when she saw the automobile drive into the alley, neither of the occupants got out of the car; that appellant was driving and his codefendant was seated alongside of him; that they drove to a point in the alley, from which the back door of the store could be seen, and where they remained for a minute or so. Thereupon, they drove the car out of the alley and within two to five minutes thereafter defendant Parra returned into the alley afoot; that he went to the back door of the store but did not go in. This witness did not see him enter the door, but testified positively she did see him come out with the boxes. She also testified that, while appellant and Parra were in the alley, she did not hear all of their conversation, but that she did hear appellant say to Parra, "Hey, Joe, Let's go." After making these observations, this witness went to the grocery store and reported what she had seen to the proprietor.

Both defendants took the witness stand and each denied that they had stolen any of Mr. Park's whiskey. Defendant Parra admitted he was in the alley. He testified and offered other evidence to the effect that he was suffering from a physical injury that left him without sufficient strength to carry two cases of whiskey. He testified he went into the alley to urinate, but left suddenly when appellant called to him. Appellant testified that, at about seven o'clock on the evening in question, he and his codefendant were in a certain café; that they left this café in Parra's car with appellant doing the driving and went to Vernon and Main Streets; that Parra was half asleep and in appellant's judgment had "too much to drink." Appellant admitted he drove the car into the alley and then backed out, stating that, after he backed the car out of the alley, he parked it just west of the alley in front of Miss Moe's house. Appellant then testified that, after parking the car and leaving his codefendant sitting therein, he walked around and into Mr. Park's store, because he "had to use the restroom." That this was his reason for going back to the rear of the store. He also admitted obtaining a match from Mr. Park and that the witness Mr. Sleiker was in the store at the time. Appellant denied that he opened the door into the alley or that he knocked any alarm clock from a shelf.

According to his testimony, upon leaving the restroom and store, he started for home; that when he came upon the automobile he had parked near the alley he noticed that Parra had gotten out of the vehicle; that he looked around for Parra and finally saw him in back of the store "getting ready to urinate"; that, because it was broad daylight, he called to Parra to come on out, saying "Joe, let's get out of here." That thereupon Parra emerged from the alley and with appellant started for a nearby café, where Parra used the restroom.

A sister of the defendant Parra corroborated his testimony as to physical injuries sustained by her brother prior to June 25, 1943, as the result of which he walked with a limp.

In rebuttal, the prosecution called Mrs. Mary Studer, who testified she was at the home of Miss Ethel Moe on the evening in question, that as she approached the Moe house, her attention was attracted by a car parked in front of the house next door, and that she then "saw a man coming down with a box, carrying it in front of him, and what drawed my attention, he took his mouth and raised the lid up." This witness further testified that the man carried the box in question past her, placed the box down on the pavement, opened the door of the automobile and put the box into the vehicle. This witness testified that when she came out of the Moe house, she again saw the same man a second time and that he was carrying two boxes, both of which he placed in the automobile.

Before this court can set aside the verdict of a jury approved by the trial court on a motion for a new trial, we must be able to say that sufficient facts could not have been found by the jury to warrant inference of guilt. Our opinion that the facts and circumstances in the case might also reasonably be reconciled with the innocence of the defendant is not controlling, and of itself does not justify us in disturbing the conclusion arrived at by the constitutional arbiters of the facts. The jury is entitled to draw inferences from facts legally proved, and where an inference of guilt is reasonably deducible from the evidence, it is not within the province of this court to substitute its judgment for that of the jury as to the weight of the evidence or the credibility of witnesses. It is only when the reviewing court can say that under no view of the evidence can it be held that facts are shown sufficient to warrant an inference of guilt that we can interfere

with the jury's determination. Manifestly, in such a case the question is one of law (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]). In the instant case, we are convinced that the circumstances shown in evidence do not justify a reversal of the judgment on the ground that they are insufficient to sustain the conviction.

It is next contended that the court committed prejudicial error in giving to the jury an instruction on the law of alibi. This claim is without merit. Appellant himself denied that he was in the room where the whiskey was stored when the alarm clock was knocked off the shelf; he denied that he ever went through the door into the alley or that he in any way aided or abetted or had any knowledge of the asportation of the stolen liquor. His testimony was that, after returning from the restroom in the store, he started for home to consume his evening meal and his mother testified that she had prepared such meal, was expecting him, and that he in fact did arrive home for his meal. A review of the evidence offered by appellant strongly indicates that it was his contention that he was not at the store when the liquor was stolen, but on the contrary was at his home at the time the burglary was perpetrated. Furthermore, although the inapplicability of the given instruction to the issues framed by the pleadings or raised by the evidence be conceded, no ground for reversal exists where, as here, the instruction was correct in the abstract and no prejudice resulted to the appellant (*People* v. *Russell,* 59 Cal.App.2d 660, 664 [139 P.2d 661]).

Finally, appellant contends that the court erred in refusing to instruct the jury at his request on the law pertaining to circumstantial evidence. It is unnecessary to here set forth the requested instructions. Suffice it to say that the court admonished the jury as to the difference between direct and circumstantial evidence; that whether the evidence was of the one character or the other, or both, the law required, before the defendant could be convicted, that the jury must be satisfied beyond a reasonable doubt of his guilt. The jury was further instructed that if the evidence was susceptible of two constructions or interpretations, each of which appeared to be reasonable, one of which pointed to the guilt of the defendant and the other to his innocence, that it was the duty of the jury to adopt the interpretation which would

admit of the defendant's innocence, and reject that pointing to his guilt.

While the instructions given were not couched in the same language as those proffered by the defendant and refused, they nevertheless set forth in substance and correctly the law applicable to the defendant's case. It is not error for the court to refuse defendent's proposed instructions when the jury are fully and fairly instructed upon the subject. In other words, defendant is not entitled to have his own particular phrasing of the law adopted by the court or given to the jury, when the court gives instructions which correctly set forth the substance of the law applicable to the issues involved in the case. Taken as a whole, the instructions fully, fairly and correctly advised the jury of the law pertaining to the issues submitted to them.

Appellant had a fair and impartial trial; was convicted on competent and sufficient evidence; and the judgment and order from which this appeal was taken should be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1944.