[Crim. No. 2844.   First Dist., Div. Two.   Mar. 20, 1953.]

THE PEOPLE, Respondent, v. GEORGE ZANES, Appellant.

John F. O'Sullivan for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Leo J. Vander Lans, Deputy Attorney General, for Respondent.

DOOLING, J.—Appellant was convicted by a jury of violating subdivision 3 of section 337a, Penal Code, receiving, holding or forwarding money to be bet on a horse race. He was acquitted of violating subdivision 2 (keeping or occupying a room for betting purposes) and subdivision 4 (placing or recording a bet).

Appellant operated a bar and restaurant. Ray Higgins had worked for appellant as a bartender and had been discharged by him because appellant heard that Higgins was "fooling around with horses." Higgins and John Cook frequented appellant's place of business. A written statement signed by appellant was introduced into evidence which contained the statement: "I hear people say that Cook and Ray Higgins take bets on horses, but I never see them do it."

An investigator for the police department entered appellant's place of business. He had $8.00 in marked paper currency with him. He sat in a booth with a stranger to him. Each of the two wrote the names of certain horses which were running that day on a sheet of paper, put some paper money in the paper and rolled it up. They then went to the bar and the other man handed his roll of paper to appellant and said: "Here, take this." The investigator said: "Will you take mine too" and handed it to him. Appellant took the two packets and put them in the cash register. About two minutes later Higgins entered and walked behind the bar, whereupon appellant opened the cash register and

handed Higgins the two packets. Higgins went into the kitchen and shortly thereafter Higgins, Cook and appellant were arrested. Cook had the marked money on his person. There was testimony from a police officer that after his arrest appellant stated "that he would receive bets from people and give them to Mr. Higgins and sometimes Mr. Higgins would give him envelopes back to give to some of the people . . . sometimes he would receive money wrapped in a piece of paper and give to—would give to Ray Higgins and sometimes . . . Ray would give him envelopes to give to other people." The money given to appellant was rolled in the pieces of paper so that it could only be seen by looking into the ends. Appellant on the trial denied all knowledge that the rolls of paper contained money or records of bets.

Appellant attacks the sufficiency of the evidence to support a finding that he knowingly received, held or forwarded money to be bet on a horse race. The circumstances above recited are sufficient to support such an inference. Appellant's admission that he had in the past received bets in the form of money wrapped in paper, to give to Ray Higgins, coupled with the fact that he accepted the two packets on that day and delivered them to Higgins although according to the investigator's testimony Higgins' name was not mentioned, together with the other facts in evidence, would reasonably support the inference that appellant knew that he was receiving money to be delivered to Higgins to bet on a horse race. The case in this respect is stronger than *People* v. *King*, 111 Cal.App.2d 201 [244 P.2d 20]; *People* v. *Coppla*, 100 Cal.App.2d 766 [224 P.2d 828]; *People* v. *Simon*, 66 Cal.App.2d 860 [153 P.2d 420]; and *People* v. *Rabalete*, 28 Cal.App.2d 480 [82 P.2d 707], which are relied on by appellant.

The prosecution introduced a statement made by appellant to an officer in which appellant declared that he did not know the contents of the papers which he received and delivered to Higgins. Appellant claims that the state having introduced this statement is bound by it. The rule is not so broad as shown by *People* v. *Coppla, supra*, 100 Cal.App. 2d 766 cited by appellant. The court in that case said at page 769: "The prosecution having presented as a part of its case the statement of the defendant that he did not know what the sealed envelopes contained, is bound by that evidence *in the absence of proof to the contrary*." (Emphasis ours.) The qualification which we have emphasized in this

quotation is satisfied in this case as we have pointed out above. (*People* v. *Marks,* 111 Cal.App.2d 357, 359 [244 P.2d 771].)

■ Appellant's claim of entrapment will not stand up under the settled rule that where the defendant would have committed the criminal act in any event the creation of the opportunity to commit the crime by the officer is not an entrapment. (*People* v. *Makovsky,* 3 Cal.2d 366 [44 P.2d 536]; *People* v. *Crawford,* 105 Cal.App.2d 530 [234 P.2d 181].) The question of entrapment was submitted to the jury on instructions which correctly delimited the doctrine and the evidence supports the jury's finding against appellant on this issue.

■ Finally appellant complains that the jury was not properly instructed on knowledge as an element of the offense. An instruction was given in the language of section 20, Penal Code: "In every crime . . . there must exist a union, or joint operation of act and intent, or criminal negligence." The words "criminal negligence" would have been better omitted. The court further instructed in the language of section 337a, subdivision 3, which omits any reference to knowledge. However we are satisfied that the jury in this particular case could not have been misled into believing that appellant could be convicted if he took and transmitted the packets to Higgins without knowledge that they contained money to be wagered on horses. The question of knowledge or lack of it was the subject of much conflicting testimony, appellant testifying flatly that he did not know what the packets contained; and in instructing on the defense of entrapment the court stated: "If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose . . . the defendant is not criminally liable. . . .

"It is important in considering the defense of entrapment to ascertain whether the acts charged . . . were the result of the intent of some other person to place the accused in the position where he might be charged with the offense, in which event the defendant may not be convicted or whether the defendant, acting in pursuance of his own intent, committed the acts, such other person merely affording him the opportunity of doing so, in which latter event the defense of entrapment would not relieve the defendant from responsibility."

Other similar instructions on entrapment were given also

stressing the necessity of the intent to commit the crime on the defendant's part. In view of these instructions it is not conceivable that the jury could have been misled into finding appellant guilty without finding that he knowingly received and transmitted money to be wagered on horse races.

The judgment and order appealed from are affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied April 4, 1953.