[Crim. No. 1336.    Fourth Dist.    Feb. 20, 1958.]

THE PEOPLE, Respondent, v. CLARENCE WEEMS, Appellant.

Morris Sankery, under appointment by the District Court of Appeal, and Sankery & Sankery for Appellant.

Edmund G. Brown, Attorney General, and Albert Bianchi, Deputy Attorney General, for Respondent.

GRIFFIN, J.—In an information defendant was charged with three counts of forgery, violating Penal Code, section 470, and four prior felony convictions, robbery, second degree, forgery, conspiracy to steal mail and to forge and utter checks, and possession of stolen mail. He admitted the four prior felony convictions and a jury found him guilty on counts one and two, but not guilty on the third count.

Defendant, in January, 1957, sought employment at the Heidelberg Ballroom, and apparently took about 20 printed blank checks from their checkbook. Thereafter, Don Chambers, a colored 16-year-old student, was in defendant's car with him and he showed Don 10 or 12 blank checks, the majority of them being the ones printed "Heidelberg Ballroom."

Don testified defendant asked him to endorse these various checks and furnished the names to be written with various pens furnished by him, telling Don he was going into business with these men and to write each name in a different handwriting. Don claimed he did not know he was doing wrong in so endorsing the checks.

As to count one, in February, 1957, Don rode with defendant to a Safeway Store in Linda Vista. The manager accepted a Janitors' union card furnished by defendant, with his photograph attached, bearing the name George Larkin, as identification, and approved the cashing of a check by his clerk for $90.15. It was purportedly signed by the Heidelberg Ballroom officials and made payable to George Larkin. At the trial the manager of the Safeway Store identified defendant as the one who presented the card and photograph to him at the store, described him as colored, wearing khaki trousers, a zipper-front jacket and a dark blue cap. The clerk likewise identified him as the man who cashed the check. She gave the same description and said she was not "absolutely positive" he was the man but she was certain to the best of her knowledge. The check was identified as one of those taken from the Heidelberg Ballroom. The signature on its face was unauthorized by its officers.

As to count two, in the same month Don went with defendant to a liquor store and according to Don, defendant told him to go inside with him and if anyone entered who looked suspicious to "beck to him"; that defendant purchased some merchandise and cashed a check in the sum of $97.13 drawn on the Heidelberg Ballroom. The check was made payable to "Curtis Mosley." Defendant showed the owner a driver's license with the name Curtis Mosley on it. Defendant was

asked to write his telephone number and he wrote on the check "BE 22506." The owner testified there was another boy with defendant when defendant cashed the check. He identified the defendant as being "very similar" to the defendant who was then seated at the table in the courtroom. It was established that this was also one of the unauthorized checks of the Heidelberg Ballroom.

Don testified to the facts set forth in the third count but the payer of the check was uncertain as to the identity of the defendant. A handwriting expert testified that the endorsements on the back of the two checks, George Larkin and Curtis Mosley, were in the handwriting of Don Chambers. Defendant failed to testify in his own behalf. He produced a witness who testified that a white man, James Carter, produced a similar check drawn on the Heidelberg Ballroom and it was cashed by him on January 23, 1957, which check was returned. He then said that 10 days later he then remembered it was a short Negro man, but definitely said defendant was not the man.

Don testified that just before trial defendant offered him "a quite large amount of money" if he would change his testimony, and that the first time he really thought there was something wrong about the affair was when he came out of the liquor store and the defendant bragged about "pulling it over" on the owner after he cashed one of the checks.

On this appeal it is defendant's argument that there was insufficient evidence to sustain the conviction on counts one and two, and secondly, that the conviction was improperly had on uncorroborated testimony of the boy. In consideration of this testimony, the other evidence and many other incriminating circumstances, the jury's findings are sufficiently supported. There was sufficient evidence, if believed by the jury, establishing the identity of the defendant as to both counts. ■ In order to sustain a conviction it is not necessary that the identification of the accused as the perpetrator of the crime be made positively or in a manner free from all inconsistencies. ■ It is the function of the jury to pass on the strength or weakness of the identification and the uncertainties of the witnesses in giving their testimony. (*People* v. *Mahoney,* 146 Cal.App.2d 485, 498 [304 P.2d 73].)

■ The question as to whether Don was an accomplice under section 1111 of the Penal Code was left for the determination of the jury under proper instructions. Assuming he was an accomplice within the meaning of that section, there

still was sufficient independent and corroborating evidence to submit the question of defendant's guilt to the jury. (*People v. Payton,* 36 Cal.App.2d 41, 52 [96 P.2d 991]; *People v. Lindsey,* 90 Cal.App.2d 558, 562 [203 P.2d 572].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.