[Crim. No. 1250. Fourth Dist. Feb. 3, 1959.]

THE PEOPLE, Respondent, v. JOHN WARDWELL, Appellant.

562

Morris B. Chain for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

SHEPARD, J.—Appeal from a judgment and order denying a new trial after conviction of violation of section 11500 of the Health and Safety Code (sale of marijuana).

Appellant complains of alleged improper admission of proof of other crimes; misconduct of district attorney in insinuating other crimes and in argument to the jury; error in excluding evidence offered by defendant; error in the court's remarks during trial; and error in instructions to the jury.

It appears from the record that a special investigator for the Kern County sheriff's office in the course of his work made contact with one Joe Arvizu, commonly and hereinafter called "Pepi." Pepi was asked by a deputy sheriff known to him to assist the special investigator, whom we will hereinafter call Van Ness, by introducing Van Ness as a buyer to a seller of narcotics. Pepi did so introduce Van Ness to defendant near a place called "Eight Ball Pool Hall," and arrangements were made to purchase narcotics. The three entered an auto and drove to an alley location near 21st and Pine Streets, where defendant delivered a "tin" of marijuana to Van Ness for the price of $10. This was on February 21st, 1958. During the trip to receive delivery of the "tin" the defendant negotiated with Van Ness for an additional sale of a larger amount, and concluded arrangements for a meeting next day at the Eight Ball Pool Hall for that purpose. On February 22, 1958, Pepi again made contact with Van Ness at the pool hall with practically identical procedure and method of approach by defendant, except that on this occasion defendant

took into his car only Pepi and he stopped at his apartment and there picked up some cigarettes (assumed to be marijuana), then drove to the same alley location, went through the same gate, reappeared as before with the marijuana and received payment of $40 therefor (a larger amount). He then returned Pepi to the point of departure, near where Van Ness was waiting and went away. Pepi was aware of the part the law officers were playing in the whole matter. Later Van Ness, with the law officers listening in, had some partly corroborative telephone conversations with defendant. The identity of defendant in these conversations was somewhat corroborated by the coincidence of his immediately subsequent actions in accordance with intentions announced in the telephone conversations. After defendant's arrest, and while awaiting trial, defendant approached Pepi's divorced wife in an effort to persuade Pepi to return to Mexico so he would not testify against defendant. In addition, there was other corroborative evidence. There was, of course, conflicting evidence but we must assume the foregoing presents the truth as the jury saw it. The weight of testimony, identifications, conflicts and witness uncertainties are in the province of the jury at the trial. (*People* v. *Weems*, 157 Cal.App.2d 753, 755 [3] [321 P.2d 884] ; *People* v. *Winston*, 46 Cal.2d 151, 156 [3] [293 P.2d 40].)

█ Plaintiff complains that the evidence of the sale on February 22, 1958, should not have been admitted. The sale of the 22nd was in the process of negotiation during and as a part of the sale of the 21st, and considering all the circumstances of place, times, persons, and methods in both sales they seemed to be so inextricably interwoven that each is partially corroborative of the other, and the recital of one is incomplete without the recital of the other so that they bear very definitely in all aspects on knowledge, intent, planning and financial purpose.

█ ''It is settled in this state, however, that except when it shows merely criminal disposition (citations), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the

564

commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' '' (*People* v. *Peete,* 28 Cal.2d 306, 314 [1] [169 P.2d 924].)

This rule is stated in various ways but it is consistently adhered to in this state. (*People* v. *Citrino,* 46 Cal.2d 284, 288 [4] [294 P.2d 32] ; *People* v. *Edwards,* 159 Cal.App.2d 208, 212 [2] [323 P.2d 484]; *People* v. *Kostal,* 159 Cal.App.2d 444, 450 [5] [323 P.2d 1020] ; *People* v. *Freytas,* 157 Cal.App. 2d 706, 719 [11] [321 P.2d 782].)

 Next the defendant complains that the district attorney committed prejudicial error in various questions. For example: ''Mr. Wardwell, isn't it a fact that last year you were in jail in the same tank as this Joe (Pepi) Arvizu?'' This question was called forth by a series of questions and answers of defendant in which he left the clear impression that Pepi was almost a complete stranger to defendant. It is true that the question might have been framed differently, but when any indirect evasion or fabrication by defendant compels a question that indirectly brings an inference of another brush with the law in order that the truth may be known, the defendant must take the consequences and there is no error. (*People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338] ; *People* v. *Zerillo,* 36 Cal.2d 222, 228 [7] [223 P.2d 223].)

 Defendant was asked the question ''Now, isn't it a fact Mr. Wardwell, you have been arrested before by Mr. Mulligan and Mr. Dodd?'' This was in response to a statement by defendant that when he was arrested on the occasion now at bar he did not know what was going on. It is evident that the district attorney was seeking to show that defendant's pretense of lack of understanding was a mere sham. Without ruling on the question of the validity of the district attorney's question it is clear that most of the harm done, if any, must be attributed to the insistence of defendant's counsel in arguing the matter in the presence of the jury after the court had already indicated a ruling in his favor, and readiness to admonish the jury to disregard the question. We cannot, under the circumstances, find any prejudicial error.

 Next was the question: ''Mr. Wardwell, isn't it a fact you have used narcotics before?'' This was apparently in response to defendant's having volunteered the statement in a prior answer: ''I never had any connection with anything like they are talking about.'' A defendant who, by his voluntary testimony, seeks to strengthen a presumption

of innocence in the particular crime charged by attempting to create a halo of complete innocence about his head, can rightly expect that halo to be promptly dispelled if there are facts with which the prosecution can truthfully do so. (*People* v. *Westek,* 31 Cal.2d 469, 479 [190 P.2d 9].)

Next, defendant alleges error by the district attorney in his argument to the jury. We have gone over these assignments of error at length and they all present the aspect of legitimate arguments of the evidence or replies to arguments advanced by the defendant. We find nothing in them worthy of note.

■ Next defendant contends that at one point in the testimony the court sustained an objection to defendant's attempt to put in the record a self-serving statement under the guise of an explanation of silence at the time of arrest. The chronological time involved in this statement was at the jail during interrogation, which was a long time after arrest. As defendant's counsel has stated in his brief, the circumstances at the time of arrest would probably not have been considered by the jury as needing any denial. Further, defendant appears to have already given whatever explanation of that particular affair he desired to give when he said "I was too scared and too mixed up to say anything." There was no contention by the prosecution that at the jail interrogation the defendant was silent or admitted the truth of the charge.

■ Defendant next complains that the court was guilty of prejudicial misconduct in certain remarks made during the trial. As is true of all strongly contested cases, there were occasional exchanges between the court and counsel. In this case they were in the minimum, and did not in any way suggest or intimate anything to the jury regarding the guilt or innocence of the defendant. Furthermore, counsel did not assign them as error nor voice any objection at the time. (*People* v. *Knocke,* 94 Cal.App. 55, 57 [1] [270 P. 468].) We can see no prejudice to the defendant in any event. Time limitations are within the discretion of the court, and counsel here makes no complaint that he had an insufficient amount of time to present his material to the jury. (*People* v. *Young,* 136 Cal.App. 699, 706 [5] [29 P.2d 440].) ■ Defendant complains that the instruction by the court on the subject of other crimes is prejudicially erroneous. We would not choose that instruction as a model of clarity. However,

it did contain the main ingredients of the subject correctly; the jury was clearly informed that the defendant was charged with only one crime; that the evidence of other crimes was received solely for a limited purpose; and that the jury must weigh the evidence on the subject of identity, intent, familiarity with the means and plan, scheme, system or design. We do not believe the jury was misled by it.

■ Defendant complains that no "accomplice" instructions were given. The evidence is uncontradicted that whatever contact Pepi made was done in aid of the sheriff's office. There was no evidence that he was an accomplice, and the giving of an accomplice instruction could only have confused the jury improperly.

■ Respecting defendant's complaint that the court failed to give Instructions 7 and 7a, relating to the court's comment on evidence, the jury was fully informed that weighing the evidence and deciding the facts were entirely within the hands of the jury, and that the jury should not take any intimation from the judge's ruling on the evidence. We have found no place in the evidence where the judge commented on the evidence, and the defendant has pointed to none. Other instructions complained about were merely repetitive expressions of matters covered in other instructions which were, in fact, given. While repetition of instructions sometimes accidentally occurs, certainly it is not good practice and no party has a right to have the same thought repeated over and over again, even in different language.

Some points contained in the instructions were, it is true, surplusage, but the jury was adequately informed that they must not pay attention to those instructions which apply to facts which they, the jury, found not to be true or do not exist. In the particular case here at bar, we see no way in which the minds of the jury were confused.

Viewing the case as a whole, we deem it worthy of comment that no judge, district attorney, defense counsel or appeals court ever tried a case or wrote an opinion that was absolutely perfect. The primary purpose of all the rules of procedure is to secure for the People and for the defendant a reasonably fair trial, in which all the relevant truth is made known to the trier of fact. No case should be reversed unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson,* 46 Cal.2d 818, 836 [12] [299 P.2d 243].) The case here at bar bears no

resemblance to such cases as *People* v. *Tucker*, 164 Cal.App. 2d 624 [331 P.2d 160].

From a review of the entire record it appears to us that the defendant received a fair trial, and that the evidence sufficiently supported the decision of the jury.

The judgment and the order denying a new trial are affirmed.

Mussell, Acting P. J., and Stone, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1959.

*Assigned by Chairman of Judicial Council.