[Crim. No. 7236.   Second Dist., Div. One.   May 9, 1961.]

## THE PEOPLE, Respondent, v. BURROUGHS MADISON McGRAW, Appellant.

Nick N. Mrakich for Appellant.

Stanley Mosk, Attorney General, and Clara E. Kauffman, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction and from an order denying a motion for a new trial in a case involving two counts of robbery.

In an information filed in Los Angeles County on October 8, 1958, appellant and his codefendant, Brown, were charged with two counts of robbery in violation of Penal Code, section 211, and with being armed with a gun at the time of the offenses. Seven prior felony convictions in the State of California were charged against appellant, such convictions including, among others, forgery and assault with a deadly weapon. The codefendant, Brown, was charged with two prior felony convictions. Brown pleaded guilty as to both counts as charged.

Appellant pleaded not guilty and ultimately admitted the prior convictions. The charge to the effect that appellant was armed was stricken from the information at or about the time of the trial. A jury found appellant guilty of robbery in the first degree as to both counts.

Appellant made a motion for a new trial and filed certain affidavits in support thereof, one of which was executed by a Francisco Lopez who was an admitted robber and whose record in the Bureau of Criminal Identification and Investigation Department consisted of approximately five pages and demonstrated that he had been in the state prison many times for crimes of violence. The prosecution filed counteraffidavits and the appellant claimed the right to cross-examine the persons who had made the counteraffidavits. The motion for a new trial was denied and appellant was sentenced to the state prison.

Some of the facts of the case are as follows. On June 15, 1959, William L. Hunter and Mrs. Dolores Harker were employed as bartender and cocktail waitress respectively at a bar known as the Pump Room on Ventura Boulevard. Hunter saw McGraw and Brown come into the place of business about 1:30 a. m. and go to the end of the bar. There were about 10 other people at the bar at that time. The bartender served two drinks each to the codefendants and got a good look at the appellant. Mrs. Harker noticed the appellant because of a particular scarf which he was wearing. The bar-

maid waited on some other customers and returned her purse to a shelf where she customarily kept her money. The bar regularly closed at 2 a. m. and ordinarily all drinks were picked up at that hour. At the time in question, shortly before 2 a. m., Hunter told the customers to have their drinks off the bar as the place was closing. Appellant, with a glass containing a drink left the bar and walked toward the swinging doors as though he were going to leave with the glass containing the liquor. The codefendant, Brown, followed the appellant in an attempt to persuade appellant to give the bartender the glass. Mrs. Harker went to assist in taking the glass from the hand of appellant; however, both Brown and appellant acted as though they were intoxicated, the latter more so and she then reconsidered and determined to let the bartender take care of the situation.

Any unusual measures became unnecessary because Brown apparently convinced appellant to return the glass to the bartender. Appellant had on horned-rimmed glasses and wore a dark sport coat and shirt. During the episode just related the other customers of the bar were leaving. After the last customer left and appellant handed the glass to Hunter, Brown produced a gun and upon pointing it at Hunter announced, "Get them up," "[t]his is a holdup." The gun was also pointed at Mrs. Harker and she was told, "Get them up, too." The victims were in fear of the gun and the codefendants. Hunter and Mrs. Harker were ordered to get down onto the floor and they did so. One of the robbers taped the victims' hands behind their backs with adhesive tape. While on the floor Mrs. Harker "felt a gun in our back" and both could hear activity in the room. The cash register was entered, and the victims could hear the rattling of the contents of the register. One of the robbers asked where the "till" was located and Hunter replied, "Behind the bar." The question was asked again and the same answer was given and one of the robbers said, ". . . I'll kill you if you don't tell us." Hunter then told them of his left-hand pocket and a money clip was taken from Hunter's person.

Mrs. Harker heard her purse being opened while the gun "was in" her back. She felt the gun leave her back for a few minutes and then heard one of the robbers say, "We haven't left yet," following which she heard footsteps approaching her and the remark, "Don't call the police. . . ." The swinging doors then opened and a few minutes later

Hunter and Mrs. Harker got up and called the police and gave to such officers a full and complete description of the robbers.

Hunter found that all of the money was taken from the cash register, as well as that from two cash boxes, totalling about $700. About $65 was taken from the purse of Mrs. Harker.

Hunter identified appellant at a police line-up on September 25, 1959, and at a later date. On the same day Mrs. Harker identified appellant in another line-up.

Brown pleaded guilty to the two counts before the trial of appellant and was called as a witness for the prosecution. Brown refused to answer when questioned as to whether the person with him was a Rocco Cellino. Brown stated further that he and appellant had been drinking but that they had separated at 11:30 that evening prior to the hold-up.

. The defense of appellant was an alibi.

Appellant now asserts that there is no substantial evidence to sustain the judgment, that the prosecution is bound by the testimony of the codefendant, Brown, that the trial judge erred in giving an instruction on intoxication and that it was error to refuse to call witnesses for cross-examination at the time of the motion for a new trial. ▮▮ There can be no question that there was first degree robbery. (See Pen. Code, §§ 211, 211a; 43 Cal.Jur.2d 88, § 38; *People* v. *Seaman*, 101 Cal.App. 302, 304-305 [281 P. 660]; *In re Chapman*, 43 Cal.2d 385, 389 [273 P.2d 817].)

Property was taken from the possession of another person or his immediate presence, against his will, accomplished by means of force or fear.

No useful purpose would be served in again relating the facts heretofore set forth. Suffice it to say that the codefendants used a gun to effectuate the crime and the intent to steal can readily be inferred from the circumstances.

We think the evidence is clear that appellant was an active participant in the robberies as charged. ▮▮ The codefendants were both identified by the victims, indeed Brown pleaded guilty and whether appellant aided and abetted Brown was a question of fact. (See *People* v. *Hernandez*, 47 Cal.App.2d 132, 133-134 [117 P.2d 394]; *People* v. *Beltowski*, 71 Cal. App.2d 18, 21 [162 P.2d 59]; *People* v. *Norris*, 125 Cal.App.2d 855, 856 [271 P.2d 59]; *People* v. *Calloway*, 127 Cal.App.2d 504, 507 [274 P.2d 497]; *People* v. *Thompson*, 147 Cal.App.2d

543, 546-547 [305 P.2d 274]; *People* v. *Gillette,* 171 Cal. App.2d 497, 501-502 [341 P.2d 398].)

The fact that appellant testified in effect that he was in another part of town during the robbery and that Brown further testified that he left appellant about 11:30 p. m. prior to the robbery simply created conflicts in the evidence. The jury apparently did not believe their testimony in such respects. (See *People* v. *Dills,* 171 Cal.App.2d 256, 260 [340 P.2d 273]; *People* v. *Von Benson,* 38 Cal.App.2d 431, 434-435 [101 P.2d 527]; *People* v. *Luchetti,* 119 Cal. 501, 505 [51 P. 707].) Furthermore, the testimony of the appellant was in many respects thoroughly impeached.

Considering next the contention to the effect that the prosecution is bound by the testimony of Brown. The cases cited by appellant, namely *People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828]; *People* v. *Marks,* 111 Cal.App.2d 357 [244 P.2d 771] and *People* v. *Zanes,* 116 Cal.App.2d 765 [254 P.2d 176], have to do with extrajudicial statements of a defendant and are not in point in the case before this court. The rule is as stated in *People* v. *Acosta,* 45 Cal.2d 538, 542-543 [290 P.2d 1]:

"The courts may sometimes say that the prosecution is 'bound by' extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt. (See *People* v. *Jacobs* (1952), 111 Cal.App.2d 281, 283 [244 P.2d 500]; *People* v. *Coppla* (1950), 100 Cal. App.2d 766, 769 [224 P.2d 828].)"

In any event the prosecution did not introduce any extrajudicial statement of the appellant. Brown at the time he was called to testify was no longer a codefendant. Brown had pleaded guilty. In fact Brown stated that he had committed the robbery and the appellant had nothing whatsoever to do with it. This evidence was only a small portion of the total. It was for the jury to determine who was to be believed and Brown's credibility was shattered considerably. The jury had the right to reject all of the testimony of Brown and appellant. (See *People* v. *Walker,* 154 Cal.App.2d 143, 146 [315 P.2d 740]; *People* v. *Saldana,* 126 Cal.App.2d 217, 218 [271 P.2d 561].) The evidence other than that of Brown's statements was ample upon which to base a conviction.

We believe there is no merit to the contention that

the court should not have given an instruction on intoxication. The instruction given was CALJIC Number 78 (revised) on voluntary intoxication. Appellant argues that he did not ask for such instruction and that therefore it should not have been given. (See *People* v. *Conley*, 110 Cal.App.2d 731 [243 P.2d 874].) There is evidence that appellant was intoxicated. The appellant himself stated that he had been drinking heavily and both the bartender and the waitress stated that he acted as though he were intoxicated.

There is nothing directed to our attention which would seem to indicate that the jury was at all confused with reference to the matter. Furthermore, there is nothing to demonstrate that a different verdict would have been returned had the instruction not been given. If it was error it was not prejudicial.

▮ In the proceeding upon the motion for a new trial certain affidavits were filed in behalf of appellant in support of a contention that there was newly discovered evidence. The general effect of the documents was that the robber who was with Brown was Francisco Lopez and not appellant. The prosecution filed counteraffidavits of various officers who had dealt in the matter one way or another. Lopez is supposed to have told the officers, "I must have been [at the robbery] because Brown told me I had been" but that "he had been so 'stoned' from using yellow jackets, pills and booze" he did not remember for sure. It was wholly proper to receive the counteraffidavits which countered what had been stated in the affidavits submitted in appellant's behalf.

▮ The appellant asked to cross-examine the makers of the counteraffidavits and the court declined to permit such examination. In *People* v. *Lee Chuck*, 78 Cal. 317, 339 [20 P. 719] and in *People* v. *Sullivan*, 129 Cal. 557, 563 [62 P. 101] it is stated in effect that the matter rests in the sound discretion of the trial court and that the appellant is not entitled to cross-examine such persons as a matter of right. We find no abuse of discretion in this case. (See *People* v. *Henderson*, 79 Cal.App.2d 94, 124-125 [179 P.2d 406].)

The judge in this case had very good reason to disbelieve the appellant, the codefendant and Lopez. (*People* v. *Peyton*, 47 Cal.App.2d 214, 223-224 [117 P.2d 683].) ▮ In *People* v. *Greenwood*, 47 Cal.2d 819, 821 [306 P.2d 427] it is stated:

"The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court. (*People* v. *Beard*, 46 Cal.2d

278, 282 [294 P.2d 29].) ▮ It is also well settled that such motions are looked upon with disfavor (*People* v. *Yeager*, 194 Cal. 452, 491 [229 P. 40]; *People* v. *Mandell*, 48 Cal. App.2d 806, 818 [120 P.2d 921]), and that an appellate court will not interfere except upon a clear showing of an abuse of discretion by the trial court. (*People* v. *McGarry*, 42 Cal. 2d 429, 432-433 [267 P.2d 254]; *People* v. *Gompertz*, 103 Cal.App.2d 153, 163 [229 P.2d 105].)''

▮ In *People* v. *Warren*, 130 Cal. 683, 685 [63 P. 86] it is said:

''A motion for a new trial upon the ground of newly discovered evidence is looked upon with suspicion and disfavor, and a party who relies upon such ground must make a strong case both in respect to diligence on his part and as to the truth and materiality of the evidence, and if he fails in either respect his motion must be denied. (*People* v. *Freeman*, 92 Cal. 359 [28 P. 261]; *People* v. *Rushing, ante,* p. 449 [130 Cal. 449 (62 P. 742, 80 Am.St.Rep. 141)].) The showing made in this case was not sufficient either as to diligence or as to the truth and materiality of the evidence.''

The judgment and the order denying the motion for a new trial are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.